No. 21-2206-cr
*United States v. LaGuardia*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15th day of December, two thousand twenty-two.

PRESENT:

> DENNY CHIN,
> SUSAN L. CARNEY,
> BETH ROBINSON,
> > *Circuit Judges.*

---

UNITED STATES OF AMERICA,

> *Appellee,*

> v.                                                                     No. 21-2206

DONALD LAGUARDIA, AKA SEALED DEFENDANT 1,

> *Defendant-Appellant.*

---

FOR DEFENDANT-APPELLANT:          DANIEL S. NOBLE (Maria Angela
                                  Brusco, *on the brief*), Finn Dixon &
                                  Herling LLP, Stamford, CT.

FOR APPELLEE:                                    ALEX ROSSMILLER (Daniel Loss, Won
                                                 S. Shin, Assistant United States
                                                 Attorneys, *on the brief*), *for* Damian
                                                 Williams, United States Attorney for
                                                 the Southern District of New York,
                                                 New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Kaplan, *J.*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on September 8, 2021, is **AFFIRMED**.

Donald LaGuardia was the founder and managing principal of L-R Managers, LLC ("LR Managers"), the investment adviser to the LR Global Frontier Master Fund, Ltd. ("Fund"). A jury convicted LaGuardia of engaging in a scheme to defraud investors in the Fund between 2013 and 2017, violating 15 U.S.C. §§ 78j(b) and 78ff and 17 C.F.R. § 240.10b-5 (securities fraud); 15 U.S.C. §§ 80b-6 and 80b-17 (investment advisor fraud); and 18 U.S.C. § 1343 (wire fraud). He was sentenced primarily to 60 months' imprisonment, three years' supervised release, restitution of $4,039,872, and forfeiture in the amount of $2,571,500.

The charges were based on evidence that from 2013 to 2017, LaGuardia solicited investments in the Fund through material misrepresentations and omissions to investors regarding how investor funds would be used, and then misappropriated a substantial portion of those funds by impermissibly borrowing or otherwise using the funds to pay for personal and LR Managers' expenses.

We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision to affirm.

I.    **Sufficiency of the Evidence of Intent**

A defendant who challenges the sufficiency of the evidence supporting a conviction faces a "heavy burden." *United States v. Glenn*, 312 F.3d 58, 63 (2d Cir. 2002).[1] We review the evidence in the light most favorable to the government and must uphold the conviction if we determine "*any* rational trier of fact could have" concluded "beyond a reasonable doubt" that the defendant was guilty of the crime charged. *United States v. Persico*, 645 F.3d 85, 104–05 (2d Cir. 2011) (emphasis in original).

---

[1] In quotations from caselaw and the parties' briefing, this summary order omits all internal quotation marks, alterations, footnotes, and citations, unless otherwise noted.

Applying these standards, we conclude that the evidence was sufficient to support the jury's conclusion that LaGuardia acted with an intent to defraud. Among other things, the government presented evidence that LaGuardia diverted investor money from the Fund to LR Managers for several years beginning in 2013, supporting the inference that when he solicited later investors, he intended to divert their funds for other uses despite his representations to them. App'x 187, 218. In some cases, the diversion of funds fell closely on the heels of LaGuardia's representations to investors about the use of the funds, supporting an inference of fraudulent intent when LaGuardia made the misrepresentations. For example, less than a week after telling investor Gavin Wilson that his investment would be applied to a subscription in the Fund, LaGuardia diverted a substantial portion of Wilson's investment to LR Managers and a related entity. Supp. App'x 210, 212, 388; App'x 247–49. Likewise, LaGuardia solicited an investment from Christopher LaCroix when he knew LR Managers was in a dire financial condition, App'x 42, and used LaCroix's investment to pay for Fund and LR Managers' expenses just one day after LaCroix invested in the Fund. Supp. App'x 197. Finally, a company executive testified that he expressed concerns to LaGuardia about the misuse of investor money. App'x 272–73.

From this and other circumstantial evidence, a jury could reasonably infer that LaGuardia had an intent to defraud investors, and that he did so by misrepresenting that their money would not be used to cover Fund and other expenses, when in fact, he knew it would be. *See United States v. MacPherson*, 424 F.3d 183, 189 (2d Cir. 2005) (recognizing that "knowledge and intent can often be proved through circumstantial evidence and the reasonable inferences drawn therefrom").

Moreover, the fact that LaGuardia documented the diverted monies as accounts receivable by the Fund does not compel a conclusion that he lacked fraudulent intent because the evidence at trial established that LaGuardia made misrepresentations to investors about how their money would be used.

## II. Evidentiary Challenges

Evidentiary determinations are reviewed for an abuse of discretion. *United States v. Kelley*, 551 F.3d 171, 174 (2d Cir. 2009). To the extent LaGuardia objected before the district court, we review the district court's evidentiary determinations under the harmless error standard. *United States v. Al-Moayad*, 545 F.3d 139, 164 (2d Cir. 2008). Where he did not preserve his arguments, we

5

review for plain error. *See United States v. Marcus*, 560 U.S. 258, 262 (2010); *United States v. Groysman*, 766 F.3d 147, 155 (2d Cir. 2014).

A. Admission of Exhibit GX 2382

Exhibit GX 2382 contains two emails—one from Sean Wilson discussing the dire financial condition of LR Managers and proposing a partners' meeting to address the situation, and a response from LaGuardia beginning, "Good email. Let's see if they respond." App'x 42–43. LaGuardia's response emphasizes that the solution is to restructure, not dissolve, the business, and describes the steps necessary to restructuring. *Id*. LaGuardia does not object to admission of his response but challenges the admission of Sean Wilson's email to him.

We conclude that the district court did not abuse its discretion in concluding that by responding, "Good email," and failing to dispute Sean Wilson's description of the state of LR Managers' finances, LaGuardia indicated that he believed that characterization to be true. F.R.E. 801(d)(2)(B) (excluding from definition of hearsay a statement offered against an opposing party where the party manifested a belief in the statement's truth). Moreover, we cannot conclude that the probative value of the evidence showing LaGuardia's knowledge of the state of LR Managers' finances during the period he was soliciting LaCroix's investment is substantially outweighed by any undue

6

prejudice arising from the language of the email. *See id.* 403. We therefore conclude that the admission of GX 2382 was not an abuse of discretion.

B.  Exclusion of Exhibits DX A and DX B

Exhibits DX A and DX B are email threads from November and December 2013, between former LR Managers' employee John Schnell and employees of SS&C Globe Op (third-party administrator) and Bank of New York Mellon (third-party custodian) for the Fund.  In DX A, Schnell discusses receivables with the administrator and custodian.  In DX B, Schnell tells an employee of the administrator how to handle fees and expenses of the Fund.  The district court sustained the government's hearsay objection to the admission of both exhibits during LaGuardia's cross-examination of Schnell.  On appeal, LaGuardia now argues that both are admissible under the business records exception and as recorded recollections.  LaGuardia also contends that DX A should have been admitted as non-hearsay because the email contains some questions, and that DX B should have been admitted because the email contains some commands. We see no error in the district court's failure to, on its own initiative, find the email communications admissible as business records.  *See* F.R.E. 803(6). LaGuardia did not lay any foundation establishing that the email communications were kept in the ordinary course of business and that making

7

the record was a regular business practice. *Id*. 803(6)(B), (C). Moreover, the district court did not err by failing to permit Schnell to read certain portions of the emails into evidence because defense counsel did not make such a request at trial. *See id*. 803(5). To the extent LaGuardia now argues that portions of the excluded documents reflect questions or commands rather than statements offered for the truth of the matter asserted, he did not seek admission of redacted versions of the documents even after the government conceded that the question in DX A would be admissible.

Moreover, in light of the minimal probative value of DX A and DX B and the substantial evidence of LaGuardia's guilt, we conclude that any error in excluding these exhibits was harmless. *See Al-Moayad*, 545 F.3d at 164. The emails were minimally probative because the communications between Schnell and third parties show little if anything about *LaGuardia's* state of mind. And to the extent LaGuardia sought to illustrate that LR Managers did not seek to conceal its accounting practices, he was able to testify to that effect.

C. LaGuardia's Testimony

The district court did not abuse its discretion in sustaining the government's objections to several questions posed in LaGuardia's direct examination.

First, with respect to his investment in LR Managers, LaGuardia was able to testify to the exact amount of his personal investment in LR Managers and an affiliated entity. The district court did not abuse its broad discretion in concluding that the significance of this investment as a percentage of LaGuardia's overall personal savings was irrelevant.

Second, LaGuardia testified that he had been discussing a partnership with Synergy Capital at the time of LaCroix's investment in the Fund. To the extent LaGuardia sought to show that LR Managers was not in as dire a financial situation as supposed at the time of LaCroix's investment, the fact that LaGuardia was in discussion with possible investors may have been relevant. But the district court did not abuse its discretion in excluding testimony that LR Managers actually entered into a partnership with Synergy Capital (an investment that ultimately did not resolve LR Managers' cash flow problems). The court reasonably concluded that this partnership agreement—entered into months after the LaCroix investment—was not relevant. Further, even if the district court erred in excluding this testimony, any error was harmless because the evidence was minimally probative and the jury in fact learned, through Schnell's testimony, that Synergy Capital became a partner of LR Managers.

Finally, the district court did not abuse its discretion in excluding testimony about the subsequent bankruptcy of LR Managers, which occurred in 2017, and the availability of some funds to repay investors. LR Managers' bankruptcy was not relevant to LaGuardia's good faith because LaGuardia solicited the investments at issue several years before LR Managers filed for bankruptcy. Moreover, as the district court explained, the fact that investors might eventually recoup some funds doesn't change the fact that they couldn't make withdrawals when they wanted to, and the potential for confusion arising from testimony about the bankruptcy proceedings would substantially outweigh any probative value. App'x 496.

## III. The District Court's Questioning at Trial

Because LaGuardia did not object to the district court's questioning at trial, we review his challenges to the questioning for plain error. *See United States v. Filani*, 74 F.3d 378, 387 (2d Cir. 1996). Under the plain error standard, an appellant must demonstrate that "(1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affects the

fairness, integrity or public reputation of judicial proceedings." *Marcus*, 560 U.S. at 262.

A court has the responsibility to exercise "reasonable control over the mode and order of examining witnesses and presenting evidence." F.R.E. 611(a). A court may even call and/or examine a witness, and a party may object either at that time or at the next opportunity when the jury is not present. *Id.* 614. We have held that a trial court's "questioning of witnesses . . . if for a proper purpose such as clarifying ambiguities, correcting misstatements, or obtaining information" is well within its responsibility to control the trial. *United States v. Victoria*, 837 F.2d 50, 54 (2d Cir. 1988). A trial court may not conduct a line of questioning designed to challenge the credibility of a witness. *See id.* at 55 ("[I]t seems to be clear error for a trial judge to ask questions bearing on the credibility of a defendant-witness prior to the completion of direct examination."). But a "trial judge need not sit like a bump on a log" either. *United States v. Pisani*, 773 F.2d 397, 403 (2d Cir. 1985). And not every improper question or comment by the trial judge deprives a defendant of a fair trial. *Id.* We conclude that neither of the two instances of questioning by the court that LaGuardia now challenges undermined his right to a fair trial.

11

First, the court's effort to clarify LaGuardia's testimony regarding the Fund's accounting practices was not an attack on LaGuardia's credibility or an attempt to elicit testimony favorable to the government. The questioning, instead, was aimed at clarifying a rather technical but important issue in the case—how funds withdrawn from the Fund for LR Managers were documented in the books of the Fund. The court began, "[l]et me see if I understand this in everyday language." App'x 453. The court continued its exchange with LaGuardia for several pages of the trial transcript attempting, through the use of questions and hypotheticals, to elicit clear testimony about the accounting practice. Eventually, the court decided to "just leave it" and told defense counsel, "[y]ou see what I'm getting at, I know. Go right ahead." App'x 458. And defense counsel, rather than object, said, "I do." App'x 458. Although the court's questions created some temporary confusion, they did not target the witness's credibility. *Cf. Filani*, 74 F.3d at 385–86 (finding district court's questioning of the defendant "probed his story for inconsistencies" in a manner, tone, and quantity that betrayed the court's neutrality such that it constituted plain error). And LaGuardia's counsel was able to get the questioning back on track and clarify the relevant testimony following the court's exchange. App'x

12

458–60. For these reasons, we cannot conclude that the court's questioning amounted to plain error.

The second instance spanned only two pages of an approximately 90-page examination of LaGuardia. An excerpt is below:

> Q. [W]hat did [the investor] get in return for that investment?
>
> A. He invested in October of 2014. And I believe everyone just saw the November 2015 portfolio. So his 50,000 was part of a very diversified portfolio providing market risk and access.
>
> Q. Okay. And –
>
> THE COURT: The question was what did he get for it.
>
> Q. Yes, what did he get for it?
>
> A. A diversified portfolio.
>
> Q. But what gives him the exposure to the diversified portfolio?
>
> THE COURT: No. Look, he didn't get the diversified portfolio, did he? He had no ownership interest directly in any diversified portfolio, did he? He became a limited partner in an entity that may involve a diversified, isn't that true?

App'x 474–75. After LaGuardia explained that when the investor's monies were moved to the master fund, he got redeemable shares in the Fund, the court responded, "All right. Let's go ahead." App'x 475.

Even if the court's tone during this questioning—which is difficult to determine from "the cold black and white of a printed record," *Pisani*, 773 F.2d at 402—was impatient, we cannot conclude that the questioning amounts to plain

13

error. *See id.* at 403–04 (concluding that although some of the judge's comments in the jury's presence were "unnecessary" and "could better have been avoided," given that they occupied a "very small part" of the trial record, and the judge instructed the jury that his questions or statements "should have no bearing on their deliberations or determinations," defendant was not deprived of a fair trial). The district court's questioning here was brief. App'x 474–75. And the district judge instructed the jury that "any comments [he's] made in managing the trial are no indication of any views that [he] might have or of what [their] decision ought to be" and that any "comments to counsel" or questions were "not intended to suggest that [he] believed or didn't believe a witness or have any view as to how [they] should decide this case." App'x 619–20. Accordingly, we reject LaGuardia's challenge to the district court's questioning.

## IV.    Forfeiture

Despite his signed stipulation agreeing that he personally obtained $2,571,500 in proceeds traceable to his offenses and that the court could enter a forfeiture judgment in that amount, App'x 840–42, LaGuardia now challenges the district court's forfeiture judgment, arguing that the district court committed plain error because the forfeiture amount exceeds the proceeds documented in the Presentence Investigation Report ("PSR").

14

Even if we accepted LaGuardia's argument that he did not waive any challenges to the forfeiture order through his stipulation, given his stipulation and the considerable evidence in the record, we would not find plain error. First, in setting the forfeiture amount, the court may consider any evidence presented by the parties at sentencing, as well as evidence already in the record, *including information set forth in a signed stipulation*. *See* Fed. R. Crim. P. 32.2(b)(1)(B); *see also United States v. Granik*, 386 F.3d 404, 411–12 (2d Cir. 2004). Moreover, in tallying the proceeds he claims are documented in the PSR, LaGuardia counts only transfers from *the Fund* to LR Managers; he excludes investor monies diverted before they ever made it to the Fund, or after they were redeemed from the Fund, and he subtracts any "repayments" LR Managers made to the Fund.

In fact, the PSR describes more than $2.3 million in funds wrongly diverted to LaGuardia's possession or control. *See* PSR ¶ 24 ($390,000 of Investor 1's funds transferred from L-R Managers Investments, L.P. to LR Managers January through March 2013); PSR ¶ 25 ($1 million of investor money transferred from the Fund to LR Managers for unauthorized purposes); PSR ¶ 26 ($500,000 of investor money transferred from the Fund to LR Managers); PSR ¶ 27 ($201,500 of investor money transferred from the Fund to repay LR Managers' debt, recorded as a loan and never fully repaid); PSR ¶ 30 ($275,000 of Investor 2's

15

money misappropriated to pay salaries of LR Managers and LaGuardia himself from October 2015 through February 2016).

In addition, in its response to LaGuardia's objections to the PSR, the government contends the evidence shows that almost all $800,000 of Investor 1's 2013 investment (rather than $390,000), and an additional $600,000 of the same investor's 2014 investment, were improperly diverted. PSR at 26–27, 37.

We do not purport to resolve any conflicts in the evidence, or to independently calculate the total funds wrongly diverted. Because LaGuardia stipulated to the forfeiture amount of $2,571,500, eliminating the need for a contested hearing on the forfeiture amount, and given the record we do have, we cannot conclude that the court's forfeiture order seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Granik,* 386 F.3d at 414.[2]

\* \* \*

---

[2] For this reason, we need not address the government's argument that a forfeiture order of over $6 million dollars, reflecting all the funds raised by LaGuardia, would "very plausibly have been appropriate." Appellee's Brief at 54.

We have considered LaGuardia's remaining arguments and conclude that they are without merit.[3]   The district court's judgment is **AFFIRMED.**

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[3] We reject LaGuardia's argument that the "cumulative effect" of any errors by the trial court violated his due process rights. *See Al-Moayad*, 545 F.3d at 178.  As set forth above, most of the claimed errors were not errors at all, and any errors the district court did commit did not "cast such a serious doubt on the fairness of the trial" as to warrant reversal of LaGuardia's conviction. *Id*.